UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**GLOBAL TROPICAL IMPORTS AND EXPORTS LLC**,

                Plaintiff,

                v.

**DAVID BERNHARDT, in his official capacity as Acting United States Secretary of the Interior**[1] *et al.*,

                Defendants.

Case No. 1:18-cv-01341 (TNM)

## MEMORANDUM OPINION

In 2015, Global Tropical Imports and Exports ("Global") imported three-horned chameleons, black-throated monitors, spiny-tailed lizards, and other reptiles from Tanzania. Federal regulations require valid permits to import these reptiles. One of Global's permits was invalid, so the U.S. Department of the Interior (the "Department") directed the company to pay a $15,000 penalty. Global now challenges that fine. Because the Court finds that the decision to fine Global complied with applicable laws, it will grant the Defendants summary judgment.

**I.**

**A.**

The Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES") is a multilateral treaty that seeks to protect plants and animals at risk of extinction.

---

[1] Mr. Bernhardt assumed the role of Acting Secretary of the Interior upon the resignation of then-Secretary Ryan Zinke on January 2, 2019. He therefore automatically replaced Mr. Zinke as a named defendant per Federal Rule of Civil Procedure 25(d).

*See* 27 U.S.T. 1087 (1973).  The United States is a party to the treaty, and Congress has incorporated it into domestic law through the Endangered Species Act (the "ESA").  *See* 16 U.S.C. § 1538(c)(1).  The ESA makes it unlawful for "any person subject to the jurisdiction of the United States to engage in any trade in any specimens contrary to the provisions of the Convention."  16 U.S.C. § 1538(c).

The ESA also authorizes the imposition of fines for violating its provisions or related regulations:

> Any person who knowingly violates, and any person engaged in business as an importer or exporter of fish, wildlife, or plants who violates, any provision of this chapter, or . . . any regulation issued in order to implement [subsections of the ESA] may be assessed a civil penalty by the Secretary of not more than $25,000 for each violation.

16 U.S.C. § 1540(a)(1).  Based on this provision and 16 U.S.C. § 1538(c), the Department may impose a fine for CITES violations.

The treaty categorizes species into three appendices.  Appendix I covers plants and animals threatened with extinction.  CITES Art. II, 27 U.S.T. at 1092.  Appendix II includes species that may soon become threatened with extinction absent strict regulations.  *Id*.  Appendix III covers species that member nations identify as requiring protection from exploitation.  *Id*.  The reptiles Global imported are Appendix II animals.  J.A. at 258, ECF No. 24-1.[2]

The import of any Appendix II species "require[s] the prior presentation of either an export permit or a re-export certificate."  CITES Art. IV, 27 U.S.T. at 1096.  *See also* 50 C.F.R. § 23.20(e) (incorporating the same requirement).  An export permit "is valid only when it contains . . . [t]he applicant's signature if the CITES document includes a place for it."  50 C.F.R. § 23.23(c).  *See also* CITES Art. VI, 27 U.S.T. at 1098 ("An export permit shall contain

---

[2] Citations to the Joint Appendix reference the Bates numbers located on the bottom of each page.

the information specified in the model set forth in Appendix IV"); CITES App. IV, 27 U.S.T. at 1144 (model export permit requiring the signature of the applicant for the permit).

**B.**

In 2015, Global imported nearly 200 reptiles from Majoka Venom Supply ("Majoka"). J.A. at 257-58; 301. The U.S. Fish and Wildlife Service, an agency within the Department, declined to clear the shipment of reptiles when it arrived at the airport because "one of the permits (#28981) was not signed by the exporter, as required by 50 C.F.R. [§] 23.23(c)." J.A. at 258. The agency found that, because of this missing signature, Global had imported the reptiles "with an invalid permit and in violation of CITES." *Id*. It noted that the missing signature violated 50 C.F.R. § 23.23(c) (requiring an applicant's signature where a CITES document has a place for it) and 16 U.S.C. § 1538(c)(1) (making it unlawful to violate the treaty). *Id*.

Based on this violation, the agency issued a Notice of Assessment, fining Global $15,000. J.A. at 228. The agency explained that "[c]ommercial respondents, such as [Global], are held to a strict liability standard under the ESA. Therefore, whether [Global] knew of or intended to violate the ESA and CITES are immaterial." J.A. at 226. It added that Global "has extensive experience in this area," and that the firm should therefore "know that it is its responsibility to know the law and properly oversee its import." J.A. at 229. Global "should also be well-versed in the CITES and the ESA," the agency reasoned, "by way of its numerous (49) prior violations." *Id*. These prior violations showed "not only culpability but a refusal to abide by serious, longstanding wildlife laws." *Id*.

Global appealed this decision to the Department's Office of Hearings and Appeals. *See* J.A. at 182. The company noted that it "does not dispute there is a missing 'applicant' signature on CITES permit 28981." J.A. at 187. Instead, it argued that Majoka was the "applicant," and

that the agency had found Global liable for Majoka's mistake by relying impermissibly on a vicarious liability theory. *Id*.

An Administrative Law Judge ("ALJ") rejected this argument. He found that the ESA makes it "quite clear that a commercial violator is held to a strict liability standard for any and all violations, notwithstanding their source (in this case Majoka)." J.A. at 46. He also found that Global's "violation is made clear by another controlling regulation." *Id*. This regulation, 50 C.F.R. § 13.50, states that "any person holding a permit under this subchapter B assumes all liability and responsibility for the conduct of any activity conducted under the authority of such permit." The ALJ noted that "[i]t is Global that 'holds' the permit. Thus, it is clear that under this regulation, Global assumes all liability for the invalid permit and for the failure of the exporter to properly sign the subject permit." J.A. at 47.

Global appealed again. The Department's Ad Hoc Board of Appeals upheld the ALJ's decision. *See* J.A. at 7. It found that "the ALJ's legal conclusion is evident in the applicable statute and regulations." J.A. at 6. And it rejected Global's "vicarious liability" argument, finding instead that the applicable laws imposed strict liability on Global for the invalid permit. *Id*.

Exhausting its administrative remedies, Global filed this suit against the Department's Secretary and the U.S. Fish and Wildlife Service. The company argues that "as the importer it cannot be held liable for the exporter's error." Am. Compl. 4, ECF No. 5. Because "there is no vicarious liability under the [applicable] statute [or] regulation," it contends, the Department's decision to impose a fine violated the Administrative Procedure Act ("APA") and "Global's substantive due process right and privilege." *Id*. at 4-6.

4

The Department maintains that the imposition of a fine was proper. Defs.' Cross-Mot. for Summ. J. ("Defs.' Cross-Mot.") at 1, ECF No. 18. It argues that the ESA "imposes strict liability on commercial importers and exporters that violate CITES," that Global is a "commercial importer," and that it "presented an invalid permit with its shipment of CITES-protected species." *Id*. Both parties have moved for summary judgment.[3]

## II.

Courts must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). Courts must also set aside final agency actions that are "contrary to a constitutional right," "in excess of statutory jurisdiction," or "unsupported by substantial evidence." *Id*.

The scope of this review is "narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Rather, it must determine whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id*. (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). An agency's decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id*.

---

[3] The Court has federal question jurisdiction over this case under 28 U.S.C. § 1331.

As the "party challenging an agency's action as arbitrary and capricious," Global "bears the burden of proof." *Lomak Petroleum, Inc. v. Fed. Energy Reg. Comm'n*, 206 F.3d 1193, 1198 (D.C. Cir. 2000). The arbitrary and capricious review standard is a "[h]ighly deferential" one that "presumes the validity of agency action." *Hagelin v. Fed. Election Comm'n*, 411 F.3d. 237, 242 (D.C. Cir. 2005). It is "not enough for the agency decision to be incorrect; so long as it has some rational basis, the court is bound to uphold the decision." *New Life Evangelistic Ctr. v. Sebelius*, 753 F. Supp. 2d 103, 113 (D.D.C. 2010).

In "their application to the requirement of factual support[,] the substantial evidence test and the arbitrary or capricious test are one and the same." *Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010). So an agency decision "may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Morall v. DEA*, 412 F.3d 165, 176 (D.C. Cir. 2005) (citation omitted). Courts may reverse an agency action only "when the record is so compelling that no reasonable factfinder could fail to find the contrary." *Orion Reserves Ltd. P'ship v. Salazar*, 553 F.3d 697, 704 (D.C. Cir. 2009).

Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and [is] otherwise consistent with the APA standard of review." *Alston v. Lew*, 950 F. Supp. 2d 140, 143 (D.D.C. 2013).

### III.

This case turns on a single question: does the law impose strict liability on Global for its failure to present a valid permit for the lizards and chameleons it imported? Unfortunately for Global, the answer—yes—is hidden in plain sight.

Consider again the ESA. The Court's inquiry "begins with the statutory text" and "ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183

(2004). The ESA states that "[a]ny person who *knowingly violates*, and any person engaged in business as an importer or exporter of fish, wildlife, or plants who *violates*, any provision of this chapter . . . may be assessed a civil penalty." 16 U.S.C. § 1540(a)(1) (emphasis added). By its plain terms, the ESA authorizes fines for two types of transgressors: (1) anyone who knowingly violates the law, and (2) commercial importers and exporters who violate the law, regardless of their intent.[4] So while others may slither out of liability for violations due to ignorance or inadvertence, commercial importers and exporters may not.

Global concedes that it is a commercial importer. *See, e.g.*, Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 4, ECF No. 17-2 ("Global's legal position is that being the importer, at arm's length in the business transaction . . ."); Pl.'s Opp. to Defs.' Cross-Mot. ("Pl.'s Opp.") at 2, ECF No. 21 ("There is no dispute that Global is the importer and Majoka is the exporter; significantly, these are two (2) distinct business entities."). So if the firm violated the ESA, it was strictly liable for the violation, and the Department's decision to impose a fine was appropriate.

By failing to present a valid permit, Global did violate the ESA. Once more, the plain terms of the applicable laws are instructive. The ESA makes a violation of a CITES provision a violation of federal law. 16 U.S.C. § 1538(c). CITES mandates that importing an Appendix II animal "require[s] the prior presentation" of an export permit. CITES Art. IV, 27 U.S.T. at 1096; 50 C.F.R. § 23.20(e). A permit is "valid only when it contains . . . [t]he applicant's signature if the CITES document includes a place for it." 50 C.F.R. § 23.23(c). And "any person holding a permit under this subchapter B assumes all liability and responsibility for the

---

[4] Because the text of the statute is clear, the Court need not consider other indicia of Congress's intent. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (cleaned up).

conduct of any activity conducted under the authority of such permit." 50 C.F.R. § 13.50.[5]

Global does not argue that Permit #28981 was valid. *See, e.g.*, Pl.'s Mot. at 4 (admitting that "one (1) CITES form [was] unsigned"). When it tried to import the reptiles without a valid permit, the company violated the law. And because Global was strictly liable for this violation, the Department's decision to impose a fine was permissible.

Global's arguments to the contrary fail to tip the scales in its favor.[6] Common to each of these contentions is Global's mistaken belief that the Department held the company liable for Majoka's failure to sign the permit. It did not. Rather, the Department found that Global violated the law when *it* presented an invalid permit while seeking to import reptiles.

The company asserts, for example, that it "was not the party responsible to sign the CITES form" and "was not responsible for reviewing or approving the exporting from Tanzania." Pl.'s Mot. at 4. True, Majoka was supposed to sign the permit and failed to do so. *See* J.A. at 239. But, per the unambiguous dictates of 50 C.F.R. § 13.50, Global bore the ultimate responsibility of ensuring that it presented a valid permit for importing the reptiles.

Global's claims are analogous to an argument heard and rejected in traffic courts across the country. In many states, speeding is a strict liability offense. *See, e.g.*, *State v. Brown*, 318 N.W.2d 370 (Wis. 1982); *People v. Caddy*, 540 P.2d 1089 (Colo. 1975). When caught speeding, drivers often blame unintended acceleration caused by their cruise control devices, suggesting that the law should not hold them responsible for a design flaw by the car manufacturer. *See,*

---

[5] Subchapter B includes the Department's regulations that govern, among other things, permit procedures for the "exportation and importation of wildlife and plants." *See* 50 C.F.R. §§ 10.1 – 24.12.

[6] The Court rejects Global's argument that the Department's briefing violated Local Civil Rule 7. Global suggests that the Department failed to file a statement of material facts. Pl.'s Opp. at 1-2. But no such statement is required in cases, like this one, in which judicial review is based solely on the administrative record. LCvR 7(h)(2).

*e.g.*, *State v. Baker* 571 P.2d 65, (Kan. 1977); *State v. Packin*, 257 A.2d 120 (N.J. Super. Ct. App. Div. 1969). But as one court observed, a driver "who entrusts his car to the control of an automatic device is 'driving' the vehicle and is no less responsible for its operation if the device fails to perform a function which under the law he is required to perform." *Packin*, 257 A.2d at 121.

As the importer, Global was "driving" the business transaction. And it was strictly liable for any resulting legal violations. Because it sought to import animals covered by CITES into the United States, the company was required by law to present a valid permit. *See* 50 C.F.R. § 23.20(e). That it was Majoka's action that rendered the permit invalid is irrelevant. Global was no less responsible for the permit than if the company had itself made an error on the form. *See* 50 C.F.R. § 13.50.

Global also argues that the Department inappropriately relied on a vicarious liability theory to hold the company liable for Majoka's actions. Pl.'s Mot. at 6. Not so. As Global notes, vicarious liability is liability that a "supervisory party bears for actionable conduct of a subordinate or associate because of the relationship between the two parties." Pl.'s Opp. at 5 (quoting *Black's Law Dictionary* 927 (7th ed. 1999)). Vicarious liability rules ordinarily require a principal-agent or employer-employee relationship. *See Meyer v. Holley*, 537 U.S. 280, 285 (2003).

The Department did not find or even allege such a relationship. Nor did it suggest that Global was vicariously liable for another party's violation of the applicable laws. For instance, the Notice of Assessment states that "[c]ommercial respondents, such as Respondent, are held to a *strict liability* standard under the ESA. . . . Therefore, Respondent is liable." J.A. 226 (emphasis added). Similarly, the ALJ noted that it is "Global that 'holds' the permit" and

9

"[c]onsequently, by regulatory imputation, the violator for this failure is not Majorca [sic]; rather, the legal violator is Global." J.A. 47. In other words, because it held the export permit, "Global became strictly liable for the ensuing violation." J.A. 47.

Next, the company argues that the Court should not use "judicial gap-findings" to read into the ESA a vicarious liability provision. Pl.'s Mot. at 9. While the ESA does not specifically address the Department's ability to impose fines based on vicarious liability, it is unambiguous on strict liability. Thus, the Court need not read any language into the statute to confirm that the Department's decision was permissible and sufficiently justified.

The rest of Global's arguments fail for the same reasons. It claims that the Department violated the company's "substantive due process right and privilege by imputing a legal wrong committed by Majoka and assessing a civil penalty upon Global." Compl. 5 (alleging violations of the Constitution and of 5 U.S.C. § 706(2)(B)). It also suggests that the fine was "unsupported by substantial evidence" and "unwarranted by the facts." Compl. 6 (alleging violations of 5 U.S.C. § 706(2)(E-F).

But again, nothing in the record supports the contention that the Department imposed vicarious liability on the firm. Instead, the evidence shows that the Department faulted Global for its own act—trying to import the reptiles without a valid form. The ESA and the Department's regulations authorized this finding. And in assessing the fine, the Department considered the CITES permit, the applicable law, and Global's arguments. *See, e.g.*, J.A. 224-240. Its decision was appropriate.

Finally, Global "requests joinder of Majoka under Fed. R. Civ. P. 19(a)(1)(B)(ii)." Pl.'s Mot. at 12. The company believes that since Majoka was the "applicant" of the permit, and since it was the party that failed to sign the form, it is a required party in the litigation. *Id*. at 12-13.

This argument misunderstands Rule 19. That rule would require adding Majoka to the case only if Majoka's absence would create a "substantial risk" that Global would incur "inconsistent obligations" because of Majoka's interest in the case. Fed. R. Civ. P. 19(a). But Majoka has no interest at stake. As explained above, the Department did *not* fine Global because of Majoka's failure to sign the permit. It imposed the penalty because of Global's failure to present a valid permit at the airport. More, Global is the plaintiff. As the master of its Complaint, Global could have named Majoka as a co-defendant if it so wished. Rule 19 is not the appropriate tool for arguing that the Department ought to have assessed its penalty against Majoka.

## IV.

In sum, the Department's decision to impose a fine on Global was reasonable, sufficiently explained, and permissible under applicable law. For all these reasons, the Defendants' Cross-Motion for Summary Judgment will be granted.[7] A separate order will issue.

Dated: February 15, 2019                                          TREVOR N. McFADDEN, U.S.D.J.

---

[7] Although they filed no counterclaims, the Defendants ask the Court to order Global to pay the civil penalty and any applicable interest. *See* Defs.' Cross-Mot. at 13. The Court declines to do so. The Department's procedures for assessing civil penalties are set forth in 50 C.F.R §§ 11.11-11.17. These regulations provide that if Global fails to pay the penalty within 20 days after the Department's decision becomes effective, "the Solicitor of the Department may request the Attorney General to institute a civil action in the U.S. District Court to collect the penalty." 50 C.F.R. § 11.17. An order from this Court before such a civil action is instituted would circumvent the Department's regulations.